UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     X
DEVORAH RAVITZ, individually and on behalf of
all others similarly situated,

<em>Plaintiff</em>,

    -against-

                                                     CASE NO: 7:19-cv-10908

EXPERIAN INFORMATION SOLUTIONS, INC.,
AMERICREDIT FINANCIAL SERVICES, INC.,
D/B/A GM FINANCIAL, and JOHN DOES 1-25.

<em>Defendants</em>.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     X

**DEFENDANT AMERICREDIT FINANCIAL SERVICES, INC. D/B/A GM
FINANCIAL'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND TO STAY TRIAL COURT PROCEEDINGS**

TROUTMAN SANDERS LLP
875 Third Avenue
New York, New York 10022

*Counsel for Defendant,*
*AmeriCredit Financial Services, Inc. d/b/a GM Financial*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 1

I.      PLAINTIFF'S CLAIMS MUST BE INDIVIDUALLY ARBITRATED ........................ 3

    A.      The Standard of Review ................................................................ 3

    B.      The Arbitration Provision Must be Enforced.......................................... 5

        1.      The FAA Requires Enforcement of the Arbitration Provision ................ 5

        2.      Plaintiff's Claims Fall Within the Scope of the Arbitration
                Provision ................................................................................ 6

        3.      Plaintiff's Claims Must Be Arbitrated on an Individual Basis ................ 8

        4.      This Action Should Be Stayed Pending the Complete of
                Arbitration ............................................................................. 9

CONCLUSION.................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. V. Dobson*,
    513 U.S. 265 (1995)................................................................................................4

*In re Am. Express Fin. Advisors Sec. Litig.*,
    672 F.3d 113 (2d Cir. 2011)...............................................................................5

*American Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)................................................................................................8

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)........................................................................................3, 4, 8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)................................................................................................7

*Cendant Corp. v. Forbes*,
    72 F. Supp. 2d 341 (S.D.N.Y. 1999)................................................................9

*Dean Winter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)................................................................................................5

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)................................................................................................5

*Gaul v. Chrysler Financial Services Americas, LLC*,
    657 Fed. Appx. 16 (2d Cir. 2016).....................................................................7

*Green Tree Fin. Corp.-Ala. V. Randolph*,
    531 U.S. 79 (2000)................................................................................................4

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
    139 S.Ct. 524 (2019)............................................................................................7

*Katz v. Cellco Partnership*,
    No. 12-9193, 2013 WL 6621022 (S.D.N.Y. December 12, 2013) .......................8, 9

*Love v. BMW Financial Services NA, LLC*,
    No. 15-124, 2016 WL 259710 (E.D.N.Y. January 21, 2016)..................................7

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)................................................................................................4

*Mehler v. Terminix Int'l Co.*,
   205 F.3d 44 (2d Cir. 2000).................................................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)...........................................................................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)...............................................................................4

*Oldroyd v. Elmira Sav. Bank*,
   134 F.3d 72 (2d Cir. 1998).................................................................6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967)...........................................................................4

*Progressive Cas. Ins. Co. v. C.A. Reaseguardora Nacional De Venzuela*,
   991 F.2d 42 (2d Cir. 1993).................................................................5

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010).............................................................................7

*Shearson/Am. Express v. McMahon*,
   482 U.S. 220 (1987)...........................................................................4

*State Bank of India v. Star Diamonds, Inc.*,
   901 F. Supp. 177 (S.D.N.Y. 1995) ....................................................6

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
   559 U.S. 662 (2010)...........................................................................8

*Sutherland v. Ernst & Young, LLP*,
   726 F.3d 290 (2d Cir. 2013)...............................................................8

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989)...........................................................................5

*Wynne v. Am. Express Co.*,
   No. 9-00260, 2010 WL 3860362 (E.D. Tex. Sept. 30, 2010).............5

**Statutes**

Federal Arbitration Act .........................................................................3, 4, 5, 8, 9

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ....................................3

Defendant, AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GMF"), submits this memorandum of law in support of its Motion to Compel Arbitration and to Stay Trial Court Proceedings.

## PRELIMINARY STATEMENT

Plaintiff's putative class action Complaint is based on allegations that all arise out of a Motor Vehicle Lease Agreement ("Agreement") entered into on June 9, 2015 between Plaintiff and GMF.  That Agreement sets forth the terms and conditions governing the parties' relationship. The Agreement includes an arbitration provision, set out in bold text, which unequivocally requires individual arbitration of the types of claims alleged by Plaintiff in this action.  As the Supreme Court has repeatedly confirmed, under such circumstances, if either party invokes the right to arbitrate, the putative class claims are required to proceed through arbitration on an individual basis – that is, on a non-class, non-consolidated, non-representative basis.

GMF previously expressed to Plaintiff its election to arbitrate this dispute.  The Court thus should enforce the Agreement, compel Plaintiff to arbitrate her claims against GMF on an individual basis, and stay this action pending completion of the arbitration proceeding.

## BACKGROUND

On June 29, 2015, Plaintiff signed a Motor Vehicle Lease Agreement at Potamkin Cadillac Buick Chevrolet in New York, NY, for a new 2015 GMC Yukon XL, with an account number of 171002689 (the "Agreement").  *See* Declaration of Henry Austin, Ex. 1.  The Agreement provides that "[t]he terms, conditions, and disclosures in this Lease govern your Lease with us," and the provision applies to any "successors or assigns."  *Id*.  The Agreement was later assigned to GMF. *Id.* at Ex. 1 ¶ 3.

1

The Agreement contains an arbitration provision, which is set out in all capital letters, and which states, in relevant part:

ARBITRATION PROVISION
PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS

1.    EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2.    IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

*Id.* at ¶ Ex. 1 at p. 6.  The provision further provides that the arbitration: (1) is "binding;" and (2) shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*)."  The Agreement also contains a separate signature line on the front of the agreement, titled "Agreement to Arbitrate" in bold font, which states "you or we may elect to resolve any dispute by neutral, binding arbitration, and not by a court action," which was signed by Plaintiff.  *Id.*  Also on the front of the agreement, once again just above Plaintiff's signature, is a provision that states in bold font, "You acknowledge receipt of a true and completely filled-in copy of all pages of this lease at the time you signed it, ***including the arbitration provision on the reverse side (item 24)***.  *Id.* (emphasis added).

The Agreement also delineates the broad scope of the arbitration provision, noting that either party could resolve "[a]ny claim or dispute, whether in contract, tort, statute, or otherwise… which arises out of or relates to your credit application, lease . . ., or any resulting transaction or relationship" through "neutral, binding arbitration and not court action."  *Id.*  The Agreement further stated that the arbitration provision extended to "the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute."  *Id.*

2

The arbitration provision specifically addresses putative class action claims, providing that "any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate as a class action." *Id*. The parties also expressly agreed that the arbitration provision would survive any "termination, payoff or transfer of this Lease." *Id*.

On November 25, 2019, Plaintiff filed this putative class action, asserting claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. All of the claims arise out of Plaintiff's assertion that GMF reported incorrect information regarding the terms and performance of the Agreement. (*See e.g.*, Compl. ¶ 26.)

On January 14, 2020, counsel for GMF notified Plaintiff's counsel of GMF's decision to elect individual arbitration of the claims in the Complaint and asked Plaintiff to consent to arbitration. Plaintiff declined to consent to binding arbitration pursuant to the unequivocal terms of the Agreement.

## I.      PLAINTIFF'S CLAIMS MUST BE INDIVIDUALLY ARBITRATED

### A.      The Standard of Review

The Federal Arbitration Act ("FAA") represents a "liberal federal policy favoring arbitration", and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). Pursuant to Section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Section 2 of the FAA mandates that arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. An arbitration agreement governed by the FAA is presumed to be valid and enforceable. *See Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985).

The Supreme Court has made clear that the FAA applies to any transaction directly or indirectly affecting interstate commerce. *Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). And, under the FAA, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Concepcion*, 563 U.S. at 339. "The overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id*. at 344; *accord Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

The enforceability of an arbitration clause is a matter of law for the courts to decide. *See In re Am. Express Merchs.' Litig*. 667 F.3d 204, 211 (2d Cir. 2012). The party resisting arbitration bears the burden of demonstrating that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. V. Randolph*, 531 U.S. 79, 92 (2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Once a court determines that a valid agreement to arbitrate exists and that covers the dispute at issue, the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts,

in accordance with their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

### B.      The Arbitration Provision Must be Enforced

In determining arbitrability under the FAA, the Second Circuit has set forth the following conjunctive test: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).   Both of those requirements are easily satisfied here.

### 1.      The FAA Requires Enforcement of the Arbitration Provision

By financing the lease of the car in New York and making payments to Texas-based GMF, Plaintiff was a party to a transaction affecting interstate commerce.   Austin Decl. ¶ 3; *Wynne v. Am. Express Co.*, No. 9-00260, 2010 WL 3860362, at *2 (E.D. Tex. Sept. 30, 2010).   Accordingly, the FAA governs, as is reflected in the language of the arbitration provision itself.

The Court therefore must give effect to the plain terms of the arbitration provision, which is presumed to be valid and enforceable.   *Dean Winter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration.") (emphasis in original).

Furthermore, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Progressive Cas. Ins. Co. v. C.A. Reaseguardora Nacional De Venzuela*, 991 F.2d 42, 45 (2d Cir. 1993) (state law applies "in determining whether the parties have agreed to arbitrate.").   "Under

New York law, a party is legally bound by his or her signature to a contract.  The party is 'conclusively presumed to know its contents and to assent to them.'"  *State Bank of India v. Star Diamonds, Inc.*, 901 F. Supp. 177, 179 (S.D.N.Y. 1995) (*citing Metzger v. Aetna Insurance Co.*, 227 N.Y. 411, 416 (1920)).

There can be no doubt that the Agreement, featuring the Plaintiff's signature on three separate lines of the Agreement, is a valid, enforceable contract.  Austin Decl. ¶ Ex. 1 at p. 3. In fact, Plaintiff even signed a separate provision in the Agreement acknowledging that she would be governed by Agreement's arbitration clause.  *Id*.  Hence, Plaintiff's account is subject to the Agreement, including its arbitration provision.

### 2.   Plaintiff's Claims Fall Within the Scope of the Arbitration Provision

As to the second criterion, the broad language of the binding arbitration provision – which embraces "any dispute" and "statutory" claim arising out of the Agreement or the lease – covers Plaintiff's claims here.  *Id.* at ¶ Ex. 1 at p. 6.  Indeed, the covered "claims" under the arbitration provision include any action relating to the Agreement, including any that relate to "your credit application, lease . . . or any resulting transaction or relationship."  *Id.*

The Complaint here specifically references the reporting of "GM Financial debt" that Plaintiff had accrued pursuant to the Agreement and that is alleged to be inaccurately reported to Experian by GMF.  (Compl. ¶¶ 25-26, 29-30, 33.)  Plaintiff's claims, which challenge GMF's reporting of information related to the debt covered by the Agreement, undoubtedly relate to the Agreement and the relationship established by the Agreement.  *See, e.g., Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000) (clause requiring arbitration of "any controversy or claim between [the parties] arising out of or relating to" the contract "is a classically broad one"); *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998) (clause requiring arbitration of "[a]ny

dispute, controversy or claim arising under or in connection with" an agreement was "prototypical[ly] broad" and "justifies a presumption of arbitrability"); *see also See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (an order to arbitrate "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

Indeed, federal courts routinely mandate arbitration of the types of claims at issue in this case with respect to similar terms and conditions. *See Gaul v. Chrysler Financial Services Americas, LLC*, 657 Fed. Appx. 16, 17 (2d Cir. 2016) (affirming a decision granting a motion to compel arbitration for FCRA claims arising out of a lease agreement based on the broad language of the arbitration provision); *Love v. BMW Financial Services NA, LLC*, No. 15-124, 2016 WL 259710 (E.D.N.Y. January 21, 2016) (same). Plaintiff's claims should be submitted to arbitration.

Furthermore, even if there were some possible dispute as to the scope of the arbitration provision, any disputes as to whether Plaintiff's claims fall within the scope of the arbitration provision and/or whether some defense to arbitration may apply are themselves reserved for decision by the arbitrator. In particular, the arbitration provision states: "any claim or dispute . . . including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute," are subject to arbitration. Austin Decl. ¶ Ex. 1 at p. 6. An agreement to arbitration "gateway" issues of arbitrability is enforceable. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability'….") (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002)); *see also Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court

may not override the contract.").  Thus, under either circumstance, this action must be sent to arbitration.

### 3.      Plaintiff's Claims Must Be Arbitrated on an Individual Basis

"Underscoring the consensual nature of private dispute resolution, . . . parties are 'generally free to structure their arbitration agreements as they see fit.'"  *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (citations omitted).  Thus, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit *with whom* a party will arbitrate its disputes."  *See Concepcion*, 563 U.S. at 344 (emphasis in original).  "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  *Stolt-Nielsen*, 559 U.S. at 664 (emphasis in original).

This jurisprudence has been reinforced by the Supreme Court.  In *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013), for instance, the Supreme Court held that a credit card agreement with the plaintiff that required the parties to individually arbitrate any "class action" claim arising out of card use required that the civil action be submitted to binding arbitration.  *Id.* at 238 ("[T]he FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims.") (citing *Concepcion*, 563 U.S. 333, 344).

Courts in the Second Circuit have routinely enforced the requirement of individual arbitration in analogous civil actions.  In *Sutherland v. Ernst & Young, LLP*, 726 F.3d 290, 298 (2d Cir. 2013), the Second Circuit recognized that class-action waivers in arbitration agreements were enforceable even if proceeding as an individual claim would be "prohibitively expensive." In *Katz v. Cellco Partnership*, No. 12-9193, 2013 WL 6621022 (S.D.N.Y. December 12, 2013), Judge Briccetti decided that language requiring all claims to move forward on an individual basis

8

through arbitration in a customer agreement was enforceable.  *Id.* at *4, *aff'd in part, rev'd in part on other grounds Katz v. Cellco Partnership*, 794 F.3d 341 (2d. Cir. 2015).

Here, as in the extensive authority cited above, the arbitration provision unambiguously provides that any and all claims arising under the Agreement shall be arbitrated on an individual basis.  Austin Decl. Ex 1 at 6.  Plaintiff's claim, which implicates GMF's reporting of Plaintiff's debt under the Agreement, relates directly to the Agreement.  Accordingly, Plaintiff must arbitrate her claims against GMF on an individual basis.

**4.      This Action Should Be Stayed Pending the Complete of Arbitration**

Section 3 of the FAA expressly provides that where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; *see Cendant Corp. v. Forbes*, 72 F. Supp. 2d 341, 342 (S.D.N.Y. 1999) (a stay is "mandatory if an issue in the case is referable to arbitration").  Accordingly, GMF requests that the Court stay the action pending the completion of arbitration.

<u>**CONCLUSION**</u>

For the foregoing reasons, GMF respectfully requests that the Court grant this Motion and compel Plaintiff to arbitrate her claims on an individual basis and stay this action.

Dated: New York, New York
       January 30, 2020

TROUTMAN SANDERS LLP

*/s Joseph M. DeFazio*
Joseph M. DeFazio
875 Third Avenue
New York, New York 10022
Phone: (212) 704-6341
Facsimile: (212) 704-6288
Email: joseph.defazio@troutman.com
*Counsel for Defendant AmeriCredit Financial*
*Services, Inc. d/b/a GM Financial*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of January, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

David Force
Yaakov Saks
Stein Saks, PLLC
dforce@steinsakslegal.com
ysaks@steinsakslegal.com
285 Passaic Street
Hackensack, NJ 07601
Phone: (201) 282-6500
*Counsel for Plaintiff*

*s/ Joseph M. DeFazio*
Joseph M. DeFazio
*Counsel for Defendant AmeriCredit Financial*
*Services, Inc. d/b/a GM Financial*
TROUTMAN SANDERS LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 704-6341
Facsimile: (212) 704-6288
Email: joseph.defazio@troutman.com

11